IN THE

# United States Court of Appeals

## FOR THE SEVENTH CIRCUIT

_____

TIMOTHY UPCHURCH,

*Plaintiff-Appellant,*

—v.—

STATE OF INDIANA, and
INDIANA DEPARTMENT OF CORRECTION,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Indiana
No. 1:19-cv-04644-SEB-MG

Honorable Sarah Evans Barker, District Judge

## REPLY BRIEF

Richard L. Darst
Cohen Garelick & Glazier
*Counsel of Record*
*Attorneys for Plaintiff-Appellant*
8888 Keystone Crossing Boulevard
Suite 800
Indianapolis, Indiana 46240-4636
Telephone (317) 573-8888
Facsimile (317) 574-3855
Email rdarst@cgglawfirm.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iv

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

1. This is a case of classic race discrimination by the worse treatment of African Americans, the abandonment by the State of Indiana of its duties as an employer, and aggravated discrimination and retaliation. . . . . . . . . . . . . .   1

2. The Order improperly granted summary judgment by acting as the finder of fact in a mystifying level of detail and complexity. . . . . . . . . . . . . . . . . . . . . . .2

3. The Order improperly considered separate pieces of evidence instead of the totality of the evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

4. The types of possible evidence are not limited, and one type of evidence can be sufficient. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5. Mr. Upchurch had impressive work performance. . . . . . . . . . . . . . . . . . . . . . 4

6. The Defendants' do not dispute that they did not promote any African Americans at CIF above lieutenant for many years. . . . . . . . . . . . . . . . . . . . 4

7. The Brief of Appellees goes back 15 years to describe discriminatory discipline of Upchurch . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

8. The State of Indiana abandoned its duties as the employer to supervise, investigate, correct, and prevent discrimination. . . . . . . . . . . . . . . . . . . . . . . . 7

9. The Defendants failed to investigate Mr. Upchurch's complaints of discrimination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

10. The Defendants failed to offer evidence of their own documents. . . . . . . . . . .8

11. This case has evidence of multiple suspicious timings. . . . . . . . . . . . . . . . . . .8

12. The Defendants lied multiple times. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

13. There is evidence of multiple ambiguous statements by the Defendants. . . .14

14. Upchurch introduced evidence of voluminous writings and Summaries to Prove Content. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

15. This case has evidence of multiple comparators treated better. . . . . . . . . . . .16

16. The Defendants use the wrong legal standards for comparators . . . . . . . . . .19

17. The Defendants deviated from practice multiple times to treat Upchurch worse. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

18. The Defendants lied when they stated that Upchurch did not dispute the Defendants' evidence and that he did not dispute that he committed misconduct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

19. All of the evidence in this case shows the pretext of the Defendants' offered reasons. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

20. There is evidence of a lack of honest belief in the Defendants. . . . . . . . . . . 27

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CIRCUIT RULE 32 CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

# TABLE OF AUTHORITIES

**Decisions**           **Page**

*Burrus v. State Lottery Com'n of Indiana*, 2008 WL 111004 (S.D. Ind. 2008) . . 7

*Casna v. City of Loves Park*, 574 F.3d 420 (7th Cir. 2009) . . . . . . . . . . . . . . . . 10

*Coleman v. Donahoe*, 667 F.3d 835 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . 10

*David v. Caterpiller, Inc.,* 324 F.3d 851 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . .19

*Delgado v. United States Department of Justice*, 979 F.3d 550 (7th Cir. 2020). . . 10

*Duncan v. Fleetwood Motor Homes of Indiana, Inc.*, 518 F.3d 486 (7th Cir. 2008) . 8

*Dunn v. Nordstrom, Inc.*, 260 F.3d 778 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . 8

*Hana Financial, Inc. v. Hana Bank*, 574 U.S. 418 (2015) . . . . . . . . . . . . . . . . . . .27

*Kelly v. State of Indiana,* 234 N.E.3d 926 (Ind.Ct.App. 2024) . . . . . . . . . . . . . 1, 7, 11

*Joll v. Valparaiso Community Schools*, 953 F.3d 923 (7th Cir. 2020) . . . . . . . . .19, 28

*Isaacs v. Hill's Pet Nutrition, Inc.*, 485 F.3d 383 (7th Cir. 2007). . . . . . . . . . . . . 8

*Leffel v. Valley Financial Services*, 113 F.3d 787 (7th Cir. 1997) . . . . . . . . . . . . . 17

*Loudermilk v. Best Pallet Co.*, LLC, 636 F.3d 312 (7th Cir. 2011) . . . . . . . . . . . . 10

*Malin v. Hospira, Inc.*, 762 F.3d 552 (7th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . 11

*Millbrook v. IBP, Inc.*, 280 F.3d 1169 (7th Cir. 2002). . . . . . . . . . . . . . . . . . . . . 19

*Miller v. Polaris Laboratories, LLC,* 797 F.3d 486 (7th Cir. 2015) . . . . . . . . . . . . 26

*Morris v. BNSF Railway Company*, 969 F.3d 753 (7th Cir. 2020) . . . . . . . . . . . . 15

*Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024). . . . . . . . . . . . . . . . 29

*Mlynczak v. Bodman*, 442 F.3d 1050 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . .. . 19

*Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016) . . . . . . . . . . . . . . 3

*Pagel v. TIN, Inc.*, 695 F.3d 622 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004) . . . . . . . . . . . . . . . . . . .  25

*Peele v. Burch*, 722 F.3d 956 (7th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Pierick v. Indiana University-Purdue University Indianapolis*, 510 F.3d 681 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*, 212 F.3d 976 (7th Cir. 2000) .  8

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) . . . . . . . 17,19, 25

*Rudin v. Lincoln Land Community College*, 420 F.3d 712 (7th Cir. 2005)  . . . . . . .20

*Shager v. Upjohn Co.*, 913 F.398 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . .26

*Shakman v. Pritzker*, 43 F.4th 723 (7th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . 1, 7

*Simple v. Walgreen Co.*, 511 F.3d 668 (7th Cir. 2007 . . . . . . . . . . . . . . . . . . . . . . . 8

*Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285 (7th Cir. 1999) . . . . . . . . . . . . . . . .25

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). . . . . . . . . . . . .17

*Troupe v. May Dept. Stores Co.*, 20 F.3d 734 (7th Cir. 1994) . . . . . .. . . . . . 3, 15, 17

*U.S. EEOC v. Target Corp.*, 460 F.3d 946 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . 8

*Valparaiso Cmty. Schs.*, 953 F.3d 932 (7th Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . .28

*Vega v. Chicago Board of Education*, 109 F.4th 948 (7th 2024) . . . . . . . . . . . . . 12,13

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270 (7th Cir. 1996) . . . . . . . . . . . . 26

*Ziccarelli v. Dart*, 35 F.4th 1079 (7th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Statutes**

Indiana Code Section 34-13-3-14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Rules**

Rule 56, Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Rule 1006, Federal Rules of Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Rule 32, Rules of the Seventh Circuit Court of Appeals . . . . . . . . . . . . . . . . . . . . 32

## Other authorities

Seventh Circuit Pattern Jury Instructions No. 1.12 . . . . . . . . . . . . . . . . .. . . . . . . . . . . 3

No. 24-1355

_____

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

| | | |
|---|---|---|
| TIMOTHY UPCHURCH, | ) | Appeal from the |
| | ) | United States District Court |
| Plaintiff-Appellant, | ) | Southern District of Indiana |
| | ) | Indianapolis Division |
| v. | ) | |
| | ) | Case No. 1:19-cv-03556-SEB-MG |
| STATE OF INDIANA, and | ) | |
| INDIANA DEPARTMENT OF CORRECTION, | ) | |
| | ) | Hon. Sarah Evans Barker, |
| Defendants-Appellees. | ) | District Judge |

_____

**REPLY BRIEF**
_____

## <u>ARGUMENT</u>

**1. This is a case of classic race discrimination by the worse treatment of African Americans, the abandonment by the State of Indiana of its duties as an employer, and aggravated discrimination and retaliation.**

This is a case of classic race discrimination by the worse treatment of Mr.

Upchurch and other African Americans for years. Dkt. 115-3, ¶¶ 301-316.

This is also a case of the State of Indiana abandoning its responsibilities and

duties as an employer by failing to investigate, correct, and prevent race

discrimination for years. Br. Appellees, pp. 19:16-27:15; *Shakman v. Pritzker,* 43

F.4th 723 (7th Cir. 2022). The Defendants argue that the wardens of each facility

make the ultimate employment decisions, but that is false. Br. Appellees, p. 2:7-8;

33:16-21; Dkt. 105-10, ¶¶ 5-7; *Kelly v. State of Indiana*, 234 N.E.3d 926, 933

(Ind.Ct.App. 2024); A-60-76. The wardens are merely the first level of responsibility for discipline, hiring and firing. The governor makes the ultimate decisions on such cases. *Id.* The superiors of the wardens, including the governor, have the responsibilities to supervise the initial decisions of the wardens and to investigate, correct, and prevent discrimination and retaliation by the wardens. But the superiors have abandoned their responsibilities, allowing the discrimination and retaliation by the wardens to continue. Br. Appellees, pp. 19:16-27:15.

If the wardens were the ultimate decision-makers, according to the Defendants' argument, the wardens or their facilities would be the employers, but that is not argued by anyone.

This is also a case of aggravated discrimination and retaliation against Mr. Upchurch for years after he complained about race discrimination and the State of Indiana abandoned the duties of the employer to investigate, correct, and prevent discrimination and retaliation. Dkt. 115-3, ¶¶ 301-316.

## 2. The Order improperly granted summary judgment by acting as the finder of fact in a mystifying level of detail and complexity.

The Order on Defendant's Motion for Summary Judgment is in error by blatantly stating that it acted as the finder of fact in granting summary judgment when faced with a mystifying level of detail and complexity. A-1, n. 1; Dkt. 135, p. 1, n. 1.

The Order is in error by disregarding the burden that the party moving for summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as to a matter of law." Rule 56(a). The

Order acted as the finder of the facts instead of requiring the moving party to show no genuine dispute as to any material fact.

A motion for summary judgment should not be filed that does not follow the legal requirements for granting a motion for summary judgment. *Malin v. Hospira, Inc.,* 762 F.3d 552, 564-65 (7th Cir. 2014). A strategy that hopes that the court would disregard the legal requirements for a motion for summary judgment is costly and wasteful. *Id.*

Even if a judge might believe that a moving party has more and/or better evidence in its favor, a motion for summary judgment does not authorize or invite the judge to weigh evidence and decide whose story is more credible or persuasive. *Ziccarelli Dart*, 35 F.4th 1079, 1083 (7th Cir. 2022).

**3. The Order improperly considered separate pieces of evidence instead of the totality of the evidence.**

All evidence must be considered together with other evidence, not considering separate pieces of evidence "alone" or "on its face" as the Order and the Brief of Appellees do. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 764 (7th Cir. 2016); Seventh Circuit Civil Pattern Jury Instruction No. 1.12; A-27:7, A-33:2; Br. Appellees p. 48, lines 5-6, 16, 22.

**4. The types of possible evidence are not limited, and one type of evidence can be sufficient.**

Decisions have described examples of types of evidence, but the types of evidence are not limited. *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). One type of evidence, if it is strong enough, can be sufficient to prove

discrimination. *Id.* Mr. Upchurch has multiple types of strong evidence.

**5. Mr. Upchurch had impressive work performance.**

The Brief of Appellees does not dispute Upchurch's impressive work

performance. A-81-84; A-95-101.

**6. The Defendants do not dispute that they did not promote any African American at CIF above lieutenant for many years.**

The Brief of Appellees does not dispute that the CIF had not promoted any

African American above lieutenant for years since 2012. The Appellees do not

identify any African American promoted above lieutenant in CIF since 2012. The

Appellees do not identify any African American holding a position above lieutenant

at CIF since 2012. The Brief of Appellees argues that Upchurch did not produce

documents for past years, but Upchurch testified that the documents produced to

him showed no promotions of African Americans, and the Defendants have not

offered any documents or evidence to contradict Upchurch. Dkt. 115-3, ¶¶ 301-307.

The Brief of Appellees identifies one African American who was hired at the

Indiana Women's Prison (IWP). Br. Appellees, pp. 21:6-11, 42:12-14. Those facts

match the facts of Jason Durr. Durr applied for a captain position three or four

times at CIF, and he had to leave CIF to go to IWP to get a captain position,

because Warden Knight would not promote him either. Dkt. 105-2, pp. 91:21-92:10;

Dkt. 105-26, p. 30-31 (Upchurch Dec, 16, 2021 pp. 113:7-114:9).

**7. The Brief of Appellees goes back 15 years to describe discriminatory discipline of Upchurch.**

The Brief of Appellees at pages 3-4 discriminates against Upchurch by going

back 15 years before 2016 to try to smear Upchurch, but the Appellees do not go back years for disciplines against white employees. Instead, the Appellees downplay the weight of the evidence of the more recent disciplines of white employees such as Palmer, White, Parrow, and other white employees. E.g. A-84-85, A-104-109; A-111-122; Dkt. 115-47-53; A-105-47.

The Brief of Appellees also ignores the evidence favorable to Upchurch that the disciplines against him were discriminatory. Dkt. 115-3, pp. 1-3, ¶¶ 6-46. Importantly, the evidence shows that in 2012, Upchurch complained to Deputy Warden Hyatte that he was a racist because Upchurch sent a white employee to the captain for disciplinary action, but the white employee was not disciplined and Hyatte disciplined Upchurch for failure to report, when Upchurch did report the white employee. A-77. The evidence also shows that six years later on January 3, 2019, the warden used that same racist event as one of the reasons for her demotion of Upchurch. Dkt. 105-9, p. 4, ¶ 21.

Upchurch described other types of discrimination that the Defendants engaged in by disciplining him over the many years. Dkt. 115-3, ¶¶ 6-72. Upchurch described the better treatment of white employees in other disciplines as well. Dkt. 115-47; Dkt. 115-2, pp. 35:12-42:14; Dkt. 115-26, pp. 12-13 (Upchurch Dec. 16, 2021 Dep. 39:2-45:13).

In about 2018, Warden Knight had targeted African American Lieutenant Tim Upchurch for termination when she stereotyped him before investigation as the Upchurch employee who sent a drawing of a penis to a female instead of the warden

targeting the white Officer Jeff Upchurch who had recent discipline and had sent the penis drawing. Dkt. 105-2, pp. 31:1-36:6; A-81-101.

In November 2018, Warden Knight targeted witness Upchurch for demotion, she did not target the white witnesses for discipline, and she demoted Upchurch based on a lie by the Defendants. After Upchurch showed that the Defendants lied, they shifted to the lie that he failed to report inappropriate comments, even though he had recently reported Myers for inappropriate comments, and Upchurch had recently reported Palmer for failure to report confiscation of contraband. Dkt. 105-2, pp. 107:4-109:1; A-81-A-101.

Even after White and Parrow were shown to be liars and thieves, the Defendants did not stop discriminating against Upchurch, and instead, gave him formal disciplines at the next opportunities shortly after he requested discretionary leave on March 26, 2019, after he requested leave for harassment, severe stress, physical pain in June and July 2020, and after he took extended leave for COVID in January 2021. A-104-109; A-111-122; A-79-80. The Defendants discriminated against him at each opportunity because he was African American and because he continued to complain about the race discrimination to the Defendants, to the State, to the EEOC, and to the courts.

After Upchurch complained about discrimination, the Defendants failed to investigate his complaints, and the white employees White and Parrow were shown by the complaints of others to be liars and thieves. A-104-A-122. White was the one who started the vague false allegations after the Warden targeted Upchurch. A-84-

A-101. Parrow was the one whom the Defendants promoted over Upchurch and then who was responsible for the decisions regarding Myers. A-91. After White and Parrow were shown to be liars and thieves, the Defendants still did not correct the discrimination against Upchurch, and they continued to discriminate and retaliate against him.

## 8. The State of Indiana abandoned its duties as an employer to supervise, investigate, correct, and prevent discrimination.

The Brief of Appellees at pages 19:16 to 27:15 confirms that the State of Indiana has abandoned the supervision, investigation, correction, and prevention of discrimination and retaliation at CIF. *Shakman, supra; Kelly, supra.*

The Appellees did not show any authority that the executive departments were separate legal entities or that they could sue and be sued in their own names. See e.g., *Burrus v. State Lottery Com'n of Indiana*, 2008 WL 111004, *3-*4 (S.D. Ind. 2008). If the executive branch departments were separate legal entities, they could lose their state immunity, they could be sued as multiple defendants, and they would not be subject to the decisions of the governor or the attorney general. *Id.* The executive departments are under the responsibility of the chief executive officer, the governor. A-66-A-76. Under the Defendants' argument, no corporation would be an employer, but rather, all departments of corporations would be the employers.

The Indiana Department of Correction does not claim to own any assets, and a judgment against it would be a worthless judgment and would cause more litigation.

## 9. The Defendants failed to investigate Mr. Upchurch's complaints of

**discrimination.**

The Brief of Appellees does not claim that anyone investigated Mr. Upchurch's complaints of discrimination. Br. Appellees 36:4-6. An employer's approach of doing nothing after receiving multiple complaints about serious conditions is a straight road to liability under Title VII. *Isaacs v. Hill's Pet Nutrition, Inc.*, 485 F.3d 383, 386 (7th Cir. 2007).

**10. The Defendants failed to offer evidence of their own documents.**

The Brief of Appellees at page 19:12-14 and page 36:6-8 argued that Upchurch failed to present specific evidence on the Defendants' progressive discipline policy and on the fact that Warden Knight has a history of not promoting African Americans. But Upchurch worked at CIF for twenty-five years, he knew the Defendants' policies, and he personally observed the employees above the position of lieutenant. *Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*, 212 F.3d 976, 980 (7th Cir. 2000).

The Order stated several times that the evidence was not clear and that documents of the employer relating to some of the employer's policies and actions were not in evidence. A-50-51. The failure of an employer to offer its documents on issues in the case is evidence against the employer. *Duncan v. Fleetwood Motor Homes of Indiana, Inc.*, 518 F.3d 486, 492-493 (7th Cir. 2008); *Simple v. Walgreen Co.*, 511 F.3d 668, 671 (7th Cir. 2007); *U.S. EEOC v. Target Corp.*, 460 F.3D 946, 958-959 (7th Cir. 2006); *Dunn v. Nordstrom, Inc.*, 260 F.3d 778, 785-786 (7th Cir. 2001).

**11. This case has evidence of multiple suspicious timings.**

The Brief of Appellees at page 19, line 9, admits that the Order found temporal proximity. The evidence of suspicious timing in this case includes multiple events of suspicious timing. This case also includes other types of evidence in addition to multiple events of suspicious timing.

The suspicious timing in this case includes very close timing of actions relating to complaints of discrimination, often on the same day or within just a few days of actions on Upchurch's complaints. On January 24, 2019, the same day that the warden denied Upchurch's first written complaint of discrimination, the Defendants gave Upchurch unauthorized overtime. On the afternoon of February 20, 2019, after the morning of the same day that Upchurch had complained to Cole in person about Upchurch's demotion, Cole gave Upchurch a second formal discipline. On March 26, 2019, the same day that the gate closure was issued to all facilities against the vague accuser of Upchurch, Colin White, Cole gave Upchurch a second formal reprimand, and that was just twenty days after Upchurch filed his third written complaint of discrimination with the State Employees' Appeals Commission (SEAC) on March 5, 2019. The defendants failed to respond to Upchurch's complaint of discrimination to SEAC, and instead, the Defendants gave him the second formal discipline on March 26, 2019. A-80.

The Defendants required that Upchurch file an EEOC charge covering every denial of promotion and adverse action against him, but when Upchurch had to file multiple EEOC charges and court cases, Cole retaliated against him about every

9

year to make him ineligible for promotion for the following year. Cole used Upchurch's requests for leave as opportunities to not respond to him but to give him unjustified disciplines. A-77-80.

In June and July 2020, Upchurch requested personal leave and sick leave in two telephone messages and two emails to Cole and SPD, but Cole and SPD refused to respond to Upchurch. After Upchurch had to take leave, Cole gave Upchurch formal discipline on July 17, 2020. A-77-80; Dkt. 115-41-42.

In January 2021, Upchurch had to take three weeks of extended FMLA leave for the COVID respiratory virus contracted at CIF. A week later, on February 3, 2021, Cole gave Upchurch a formal suspension for possession of one inch of chewing tobacco found on the floor in a video when Upchurch did not possess or use tobacco. Dkt. 115-3, ¶¶ 262-280. Upchurch asked Cole to replay the video for Upchurch, but Cole refused. *Id.* Upchurch asked Major Gilley to review the video, and the Major agreed with Upchurch that it did not show Upchurch with any tobacco. *Id.* Upchurch requested a tobacco test as provided by policy, and Cole deviated from the policy and refused to give Upchurch a tobacco test. *Id.*; A-77-80;

Very close suspicious timing is sufficient alone to prove retaliation. *Peele v. Burch*, 722 F.3d 956, 960 (7th Cir. 2013); *Loudermilk v, Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011); *Casna v. City of Love's Park*, 574 F.3d 420, 422-23 (7th Cir. 2009). Upchurch has evidence of very close suspicious timings and repeated suspicious timings for years. A-77-80. *Delgado v. United States Department of Justice*, 979 F.3d 550, 562 (7th Cir. 2020); *Coleman v. Donahoe*, 667 F.3d 835, 407

(7th Cir. 2012). Retaliatory actions can be the culmination of retaliation after a longer campaign of other retaliation. *Suders v. Pennsylvania State Police*, 542 U.S. 129, 129-131 (2004).

The warden told Upchurch that she demoted him because he had been a hindrance since 2012, which is when he told Deputy Warden Hyatte that Hyatte was a racist. A-77. In about 2018, the warden stereotyped Upchurch and targeted him for termination because of white employee Jeff Upchurch's drawing of a penis. Dkt. 105-2, pp. 31:1-36:6. In November 2018, the warden targeted Upchurch for demotion, but the warden did not target for discipline any white witnesses like Farmer, Palmer or Parrow. A-83-93. An employer having a long memory against a plaintiff is evidence of retaliation. *Malin v. Hospira, Inc.*, 762 F.3d 552, 560 (7th Cir. 2014).

**12. The Defendants lied multiple times.**

The Defendants lied when they stated that the warden of a facility has the ultimate authority to hire and fire employees at that particular facility, that the ultimate decision-making as to hiring and firing is with the administrators of each facility, including the warden, and that the governor does not have any authority to make hiring or firing decisions with respect to particular employees working in a facility operated by the Indiana Department of Correction. Dkt. 105-10, pp. 1-2, ¶¶ 5-10. Actually, the governor has the ultimate decisions to supervise employees operating under his authority and has the ultimate decision to settle cases involving employees. A-60-76; IC 34-13-3-14; *Kelly v. State of Indiana*, 234 N.E.3d 926, 933

(Ind.Ct.App. 2024). The Defendants even told Upchurch and other employees in the Department of Correction repeatedly that they were state employees. A-76. The State knows its statutory authority and its court cases more than anyone, but it tried to take unfair advantage of inapplicable court cases involving school boards and elected legislative officials to try to claim that they applied to the governor and the executive departments when they obviously do not apply to the governor and executive departments. *Vega v. Chicago Board of Education*, 109 F.4th 948, 957 (7th Cir. 2024). The State knows the governor has the ultimate authority over the executive branch, not the wardens of each facility. The State claimed that the first line authority for hiring and firing had the ultimate authority for hiring and firing and misled the Order in this case.

The Appellees and the Order admit that Upchurch's meeting with Cole and Fox in which he complained about the failure to promote him and other African Americans for years occurred in April or May 2018 at the time they told Upchurch he was not promoted. A-6:1-7:17; Br. Appellees, pp. 5:19-6:2. The Defendants later lied and tried to change the date of Upchurch's complaint about the failure to promote him, from April or May 2018 to February 20, 2019, when Upchurch actually met with only Cole and complained about his demotion, not about the failure to promote him ten months earlier. The deputy warden and warden had direct participation in what was told to them and when it was told to them, and after Mr. Upchurch's lawsuit, they tried to lie about when Upchurch complained to Cole and Fox in April 2018 about the failure to promote him and other African

12

Americans, not after his demotion on February 20, 2019. *Vega, supra.*

The warden admitted that she knew about the complaint of discrimination to Cole and Fox about their failure to promote him and other African Americans for years since the warden arrived in 2012. Dkt. 105-9, p. 5, ¶ 27. After the lawsuit was filed, the warden implied, and Deputy Warden Cole falsely stated that Upchurch's complaint to him and Fox about the failure to promote him was ten months after the failure to promote him on February 20, 2019, when Upchurch actually complained about his demotion, not his failure to be promoted. Dkt. 105-1, pp. 4-5, ¶¶ 14-17; Dkt. 105-9, ¶ 27.

After the warden targeted Upchurch to SPD for demotion, SPD changed Upchurch from Witness No. 4 to a target, asked other witnesses to make statements against him, and lied by stating that "the investigation confirms that Upchurch made inappropriate comments regarding White to Palmer," when no one even made such allegation. A-81-93, esp. A-92. The SPD investigator who made the lie was the same investigator who was a direct participant in all of the interviews and in the written report, so there is evidence that the Defendants' investigator knew it was a lie. *Vega*, *supra*. The SPD investigator was motivated to make false statements to demote Upchurch after the warden targeted Upchurch for demotion. The Defendants have been motivated for years to say the worst about Upchurch and take adverse actions against him at every opportunity. The persons who received the report also saw that no one claimed that Upchurch made any inappropriate comments, so there is evidence that they also knew that the conclusion and

13

recommendation in the report were a lie.

### 13. There is evidence of multiple ambiguous statements by the Defendants.

The warden admitted to Upchurch that she demoted him because he had been a hindrance since she arrived in about 2012, which was about the time that Upchurch complained to Deputy Warden Hyatte that Hyatte was a racist for falsely disciplining him for failure to report when he had reported a white employee, and Hyatte failed to discipline the white employee. A-20-22; A-28:7-15; A-31:14-32:3; A-77.

The Order weighed the evidence and chose to believe Defendants' witnesses over Upchurch, which is improper. The Order also weighed the evidence and made findings that the serious lie against Upchurch in the Investigation Report that was the reason for his demotion was "inaccurate," instead of a lie. The Order's descriptions of those false statements and other statements of the Defendants were inaccurate, but the "inaccuracies" means they are false and are evidence of lies and motivations for discrimination and retaliation. The Order consistently chose to weigh the evidence, draw inferences, decide the credibility of the persons involved, and make findings of fact in favor of the moving parties, which violate the legal standards for motions for summary judgment.

The warden told Upchurch that she chose to believe the white new low-level employee with a lot of unauthorized leave who had motives to lie instead of believing the warden's experienced highly rated supervisor who was African American, Upchurch. The warden's actions consistently weighing the evidence and

the credibility against the experienced, highly rated supervisor African American is evidence of the race discrimination against him and other African Americans for years.

If the statements of the warden and deputy warden are not lies, they are certainly ambiguous statements, which are evidence of discrimination and retaliation. *Troupe, supra.*

### 14. Upchurch introduced evidence of voluminous writings and Summaries to Prove Content.

The Order on Defendant's Motion for Summary Judgment cited and relied on the Defendant's summary of the discipline of Upchurch. A-5:1-7. But the Order failed to recognize the evidence of Plaintiff's summaries in response to the Defendant's summaries. A-19: n. 4. Also, the Order failed to recognize the voluminous evidence summarized in the summaries. *Id.*; Dkt. 115-47-53. The Order stated that the summaries included facts and legal arguments not included in the summary judgment briefing, but the facts were cited in the briefing, and there were no legal arguments or legal citations in the summaries of the voluminous documents. *Id.*

Earlier decisions have encouraged parties to include detailed facts in their summaries. See earlier decisions cited in *Morris v. BNSF Railway Co.*, 969 F.3d 753, 759-762 (7th Cir. 2020). When summaries have not included detailed facts, courts have not considered them because they have not been detailed. *Id.*

The Order in this case is in error because it is contrary to prior decisions by requiring a motion for leave to supplement briefing or to file an oversized brief in

order to consider the evidence of summaries to prove content. A-19, n. 4. The Order is also in error because a motion for leave to file evidence of summaries to prove content is not required by Rule 1006 of the Federal Rules of Evidence on Summaries to Prove Content. The Order is also in error because it would be impractical to require supplemental briefing or oversized briefs in order to consider the evidence of summaries to prove content. Supplemental briefing or oversized briefs to copy summaries that are already in evidence would be repetitive, superfluous, and confusing. The Order is also in error because requiring supplemental briefing or oversized briefs to consider evidence of summaries to prove content would defeat the purpose of Rule 1006 to admit into evidence Summaries to Prove Content, to simplify evidence, not repeat evidence.

The 2024 amendment to Rule 1006 clarified that a party may offer a Rule 1006 summary as evidence and that the court may not instruct the jury that a summary admitted under this rule is not to be considered as evidence. Rule 1006, Committee Notes on Rules—2024 Amendment. The Order in this case is in error in failing to consider the voluminous evidence and the evidence of the summaries to prove content. The Order is also in error by ignoring the summaries to prove content and then stating that "the parties' explications were far from clarifying, much less simplifying in facilitating the Court's review." A-1, n. 1. The parties followed the prior decisions and Rule 1006 for providing detailed evidence and summaries of the detailed evidence. The Order is in error in disregarding the voluminous evidence and the summaries of the voluminous evidence.

**15. This case has evidence of multiple comparators treated better.**

Evidence of the better treatment of a comparator is not required to prove discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Leffel v. Valley Financial Services,* 113 F.3d 787, 793 (7th Cir. 1997); *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736-37 (7th Cir. 1994). Evidence of the better treatment of a comparator is merely one type of circumstantial evidence of discrimination. *Id.*; *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148-149 (2000).

The better treatment of only one comparator is sufficient to prove discrimination against the plaintiff. *Leffel, supra.* The Brief of Appellees at page 18:14-18 admits that Mills was treated better but argues that the one single comparator is not evidence of discrimination. The Appellees' argument is contrary to law. *Reeves, supra; Burdine, supra; Leffel, supra.*

The Brief of Appellees at page 19:7-12 argues that "none of Upchurch's comparators were similarly situated in all material respect, so their different treatment is not evidence of retaliation." But if there are no similarly situated comparator, a plaintiff cannot be required to show the impossible conclusion that a nonexistent comparator was treated better. *Leffel, supra.*

Furthermore, the Order is in error, because the persons promoted instead of a plaintiff are always comparators. The Brief of Appellees admits "their different treatment." 19:7-12. The Defendants argue that most of the persons promoted were promoted because Upchurch had discipline within a year, and so, the discriminatory

discipline caused the discriminatory failure to promote.

The Order and the Brief of Appellees at various pages argued that some comparators were in higher or lower positions, but they were all under the supervision of the warden and the deputy warden, who made the decisions on all employees at CIF, and all of those employees were subject to the same policies of CIF, so they were all comparators. *Coleman v. Donahue,* 667 F.3d 835, 846-852 (7th Cir. 2012).

The Brief of Appellees argues at various pages that the warden and other decision-makers may not have had knowledge of their discipline of Upchurch, but there is evidence that the warden and other decision-makers relied on the discipline of employees through employment records, applications, interviews, and discussions among persons who knew the applicants. Dkt. 105-1, pp. 2-3, 30, 33, 38; Dkt. 105-9, ¶¶ 11-22. The State Personnel Department also knows of the discipline of employees and shares information with other facilities and other departments about disciplines. Dkt. 115-15-16; Dkt. 115-43-44. The decision-makers knew of the disciplines of Upchurch and other employees.

The Brief of Appellees argue that other employees promoted during the short periods of time that Upchurch was eligible for promotion, were more qualified, but none of them had the impressive qualifications that Upchurch had. Nor do the Defendants offer any evidence that as soon as a one-year period expired, the Defendants multiple serious disciplines of Upchurch had no effect. Also, the Defendants continued even to prefer to promote white employees to CIF from other

facilities, deviating from CIF policy when Upchurch applied for promotion. Dkt. 115-44. The Brief of Appellees argues that Richey and Gilley, who were promoted from Pendleton Correctional Facility (PCF) to CIF, had experience with serious offenders, but CIF did not have serious offenders, and Upchurch had many experience and higher performance statements. A-81-83; A-95-101. The Defendants' deviations are also again evidence against the Defendants.

The comparison of employees involves credibility determinations, weighing the evidence, and drawing inferences, and such fact issues are the province of the jury. *See, Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143-151 (2000); *Coleman, supra* at 850-851. The Order boldly stated that it was acting as "the fact finder . . . faced with a mystifying level of detail and complexity." A-1, n.1.

**16. The Defendants use the wrong legal standards for comparators.**

The Brief of Appellees repeatedly uses the wrong legal standards for comparators by stating that the qualifications of plaintiff must be so favorable to the plaintiff that there can be no dispute that the plaintiff comparators must be so much more qualified for the position that he was "clearly better qualified." Br. Appellees, pp 41:1-42:3; A-26:1-27:2; A-43:1-45:10. The Appellees and the Order rely on the decision of *Mlynczak v. Bodman,* 442 F.3d 1050, 1059 (7th Cir. 2006) (quoting *Millbrook v. IBP, Inc.,* 280 F.3d 1169, 1180 (7th Cir. 2002). Br. Appellees pp. 41-1-42:3; A-26:6-27:2; A-43:1-45:10.

The Seventh Circuit has explained that the *Millbrook* rule was used only where "the plaintiff relies *exclusively* on evidence of the applicants' comparative

19

qualifications." *Joll v. Valparaiso Community Schools*, 953 F.3d 923, 934 (7th Cir. 2020) quoting *David v. Caterpillar, Inc.*, 324 F.3d 851, 863 (7th Cir. 2003) (emphasis added). The *Millbrook* statement does not apply to Upchurch because he has multiple types of additional evidence.

The Brief of Appellees at pages 18:27 and 21:7 is also in error in expanding the *Millbrook* statement from "clearly more qualified" to "glaringly more qualified" which would be error even if a comparator was the only evidence.

### 17. The Defendants deviated from practice multiple times to treat Upchurch worse.

An employer's deviation from a practice is also evidence of discrimination or retaliation. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 267 (1977); *Pierick v. Indiana University-Pursue University Indianapolis*, 510 F.3d 681, 693 (7th Cir. 2007); *Rudin v. Lincoln Land Community College*, 420 F.3d 712-727 (7th Cir. 2005). The Defendants deviated from their normal policies and practices in each action against Upchurch, including the following.

The Defendants denied him promotion when CIF employees were preferred, and he had impressive qualifications. The warden contacted supervisors of a white lieutenant outside CIF in order to promote the white lieutenant from outside CIF. The Defendants changed Upchurch's shift without the seven-day notice, requiring him to use accumulated leave for childcare. The Defendants had a sergeant give him an unauthorized request to work overtime. The Defendants gave him formal discipline for not working overtime when he was not properly requested to work

overtime. The Defendants refused his first request of the year to allow ½ hour of unauthorized leave as authorized leave. The Defendants refused to respond to or give him information about his requests for personal leave and sick leave for harassment, severe stress and physical pain until days after he had to take leave and they denied his requests without considering other possible leaves to grant. The Defendants refused to allow Upchurch to view a video again with Cole and to check the evidence. Cole refused to give him a tobacco test, the Defendants refused to follow Captain Gilley's statement that he could not see Upchurch possessing any tobacco in the video, and the Defendants' failed to conduct an investigation of contraband by Intelligence and Investigations (I & I).

The Defendants failed to investigate Upchurch's complaints of discrimination.

## 18. The Defendants lied when they stated that Upchurch did not dispute the Defendants' evidence and that he did not dispute that he committed misconduct.

The Defendants are not truthful when they state: "There is no dispute of material fact and no reasonable jury could conclude based on the undisputed evidence that the Department retaliated against Upchurch either by demoting or refusing to transfer or promote him." Br. Appellees p. 50:10-12. Upchurch has disputed the material facts with multiple types of evidence as described in the paragraphs above and below this.

The Defendants made similar lies throughout the Brief of Appellees.

In the argument on Cole's suspension of Upchurch for possession of tobacco, the Brief of Appellees at page 50, lines 10-21 lies and states that other than the

possession of tobacco, "Upchurch admittedly committed the misconduct." That is a lie because Upchurch disputed all of the alleged misconduct.

Upchurch disputed the alleged misconduct that was the basis for the demotion of him, which was making inappropriate comments. Dkt. 115-3, ¶¶ 91-121; A-92.

After Upchurch filed a lawsuit and showed that the Defendants lied about the allegation of misconduct in order to demote him, the Defendants shifted their reason and lied again by stating that Upchurch failed to report or correct peer harassment. Dkt. 105-9, ¶ 21. That shifted reason was not the basis for his demotion. It was a later, shifted, and after the fact attempt to excuse the discriminatory demotion.

Upchurch also disputed the shifted reason as well. Upchurch disputed that he heard any derogatory comments about White. He also introduced evidence that if he had heard derogatory comments, he would have reported them because he had reported derogatory comments before by Myers and by Palmer, on whom the Defendants based their sifted reason. Dkt. 115-3, ¶¶ 91-121; A-84-85. Dkt. 105-2, pp. 107:4-124:6-9.

Upchurch has also denied the Defendants' allegations by offering evidence that in March 2019, the Defendants confirmed that White was a liar and a thief, and the Defendants still refused to investigate Upchurch's complaints of discrimination or prevent the Defendants' new acts of discrimination and retaliation.

Upchurch has disputed the Defendants' shifting allegations of misconduct by many types of evidence, and the Defendants continue to lie when they state that "Upchurch admittedly committed the misconduct." Br. Appellees, p. 50:20.

Upchurch disputed the alleged misconduct of failure to work overtime and stated that the failure to work overtime was because he was not legally requested to work overtime, and that the lack of accumulated leave was caused by the warden not giving him a seven-day notice of change of shift when he had child care duties depleting his accumulated leave. He explained the reasons to Lt. Ridgway on February 3, 2019, and Ridgway did not dispute Upchurch's reasons until Upchurch complained about his demotion on February 20, 2019. On the afternoon of the same day as his complaint, Cole gave him the first formal discipline for January overtime. Dkt. 115-3, ¶¶ 127-147. Upchurch disputed the misconduct, and the Defendants lie when they state that "Upchurch admittedly committed the misconduct." Br. Appellees, p. 50:18-21.

Upchurch disputed the alleged misconduct of ½ hour of unauthorized leave, because Cole had the authority to change the one unauthorized leave in a year to authorized, Cole deviated from the practice and refused to do so for Upchurch, CIF had changed a lot of unauthorized leave of Colin White to authorized and approved his transfer to his preferred facility of Indiana Youth Center and his preferred position of recreation director. On March 26, 2019, the shift supervisors of all facilities were told that White was terminated without eligibility for rehire, and on the same day, Cole still refused to follow the normal practice and grant Upchurch ½

hour of authorized leave. Dkt. 115-3, ¶¶ 91-158; A-95-110. Upchurch disputed the allegations of misconduct.

The Defendants state that they had "legitimate reasons for not promoting or transferring Upchurch because he was ineligible for promotion for many of the positions he applied for." Br. Appellees, p. 50:15-16. The reason he was ineligible for promotion was because the Defendants gave him discipline for allegations that Upchurch disputed. So, Upchurch also disputed the failures to promote or transfer him. He has applied for promotions and transfers many times, he has disputed the reasons to the Defendants, he has disputed the reasons to the EEOC, and he has disputed the reasons to the courts. Dkt. 115-3, ¶¶ 159-173, 180-218, 223-237, 252-254, 284-300. It is not true that "there is no dispute of material fact," and it is not true that "Upchurch admittedly committed the misconduct." Br. Appellees, p. 10-21.

For the short times that the Defendants did not make Upchurch ineligible for promotion by unjustly disciplining him, Upchurch also disputed that he was not more qualified than the white employees who were promoted.

In June and July 2020, Upchurch disputed the alleged misconduct of taking leave for harassment, severe stress, and physical pain, because Cole, Fox, and SPD refused to respond to his requests for leave or give him information until after he had to take leave. Even after he had to take leave, the Defendants refused to approve his leave or give him information about possible types of leave. Dkt. 115-3, ¶¶ 222-251; Dkt. 115-40-115-43.

The Brief of Appellees states multiple times at pages 20:2-13 that the

evidence is undisputed, when the evidence is clearly disputed, increasing the costs and expenses for a motion that should not have been filed. *Malin, supra.*

**19. All of the evidence in this case shows the pretext of the Defendants' offered reasons.**

Evidence of pretext is only a type of evidence, and it is not required to prove discrimination. Evidence of pretext "is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves,* 530 U.S. at 148-149.

The evidence of pretext can include evidence that the reason offered by the employer is without factual basis or that it is insufficient for the action offered by the employer. The evidence in this case shows both that the Defendants' reasons are without basis and that they are insufficient for the Defendants' actions.

Decisions that have held that the reason offered by the employer was not a sufficient reason for the action include the following decisions. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 136-152 (2004) (the employer's arrest of the employee for theft of her exam tests from the employer was the employer's action ratcheted up to the breaking point of the constructive discharge of the employee); *Coleman v. Donahoe*, 667 F.3d 835, 843, 851 (7th Cir. 2012) (plaintiff made an indirect threat against a supervisor but other dangerous acts were dismissed as mere horseplay, and summary judgment on retaliation was reversed); *Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*, 212 F.3d 976, 979 (7th Cir. 2000) (gluing an artificial fingernail on the finger of a friend in the ladies' bathroom during a break may be insufficient for termination, and summary judgment was reversed);

*Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285, 287-291 (7th Cir. 1999) (employer's making plaintiff's eating a handful of taco chips into a charge of theft and "gross misconduct" may be unworthy of credence and not sufficient for termination, and summary judgment was reversed; the employer stated that it terminated seven other employees not in the protected class for theft, but the employer was unable to show what the other employees took, except that some were terminated for theft of time and some for theft of property); *Williams v. Bristol-Myers Squibb Co.,* 85 F.3d 270, 275 (7th Cir. 1996) (when plaintiff failed to notice that a record contained an unauthorized signature, the employer's insistence that plaintiff did just what the other employees fired for falsification did, without employer's detailed evidence, cast additional doubt on its good faith).

Also, when the employer causes poor performance by the employee, it is evidence of the pretext of the reason offered by the employer. *Miller v. Polaris Laboratories, LLC*, 797 F.3d 486, 490-493 (7th Cir. 2015); *Pagel v. TIN, Inc.*, 695 F.3d 622, 630 (7th Cir. 2012); *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990).

The types of evidence of pretext in this case include the following:

Upchurch's impressive qualifications

The Defendants' failed to promote any African American at CIF above lieutenant for years

The Appellees go back 15 years for discriminatory disciplines of Upchurch

The State of Indiana abandoned its duties as an employer to investigate, correct, and prevent discrimination

26

Defendants failed to investigate Upchurch's complaints of discrimination

Defendants failed to offer evidence that is contained in their own documents

Multiple close timings and suspicious timings

The Defendants lied multiple times

Defendants' multiple ambiguous statements

Plaintiff introduced voluminous writings and summaries to prove content

Multiple comparators were treated better than Upchurch

Defendants' multiple deviations from practices to treat Upchurch worse

Appellees lied that Upchurch did not dispute the allegations of misconduct

The falsity of the Defendants' offered reasons for their actions

The insufficiency of the Defendants' offered reasons for their actions

**20. There is evidence of a lack of honest belief in the Defendants.**

The Brief of Appellees at pages 50:21-51:2 admits that Upchurch disputed the false allegation that he possessed one inch of tobacco found on the floor. For the possession of tobacco allegation, the Appellees fall back on an argument that they honestly believed the false accusation even though it was disputed. That Defendants' argument that they had an honest belief is additional evidence that the allegation against Mr. Upchurch was false.

The more objectively unreasonable the employer's alleged reason, the more likely it did not honestly motivate the challenged employment action and that it was a pretext for discrimination. *Duncan v. Fleetwood Motor Homes of Indiana, Inc.*, 518 F.3d 486, 518 F.3d 486, 492 (7th Cir. 2008). Issues of reasonableness are

usually issues of fact for the jury to decide. See, *Hana Financial, Inc. v. Hana Bank*, 574 U.S. 418, 422-423 (2015).

The issue of honest belief is like the issue of pretext. All of the above-described evidence is considered, especially the years of discrimination at CIF, the lies of the Defendants, the many deviations of the Defendants from their practices, the State's abandonment of its duties, the very close timings, the failure to investigate Upchurch's complaints of discrimination, and the years of discrimination and retaliation against Upchurch.

<u>CONCLUSION</u>

For all of the foregoing reasons, the judgment of the District Court should be reversed, and the case should be remanded to the District Court for further proceedings.

Respectfully submitted,

<u>s/ Richard L. Darst</u>
Richard L. Darst

Richard L. Darst
Attorney at Law
Suite 800
8888 Keystone Crossing Blvd.
Indianapolis, Indiana 46240-4636
Tel: 317-573-8888
Fax: 317-574-3855

<u>Circuit Rule 32 Certification</u>

Pursuant to Rule 32(a)(7) and Rule 32(g)(1) of the Federal Rules of Appellate Procedure and Circuit Rule 32(c), the undersigned attorney hereby certifies that the brief complies with the type-volume limitation of Circuit Rule 32(c). The number of

words in the brief is 6990. The name and version of the word-processing system employed is Microsoft Word for Microsoft 365.

s/ Richard L. Darst
Richard L. Darst

Certificate of Service

I certify that on February 24, 2025, I electronically filed the foregoing and the appendix with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Richard L. Darst
Richard L. Darst
